```
BERGEN COUNTY COURTHOUSE
SUPERIOR COURT LAW DIV
BERGEN COUNTY JUSTICE CTR RM 415
HACKENSACK         NJ 07601-7680
                                        TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (201) 527-2600
COURT HOURS  8:30 AM - 4:30 PM

                         DATE:   AUGUST 16, 2017
                         RE:     NORTH JERSEY BRAIN & SPINE CENTER VS AETNA LIFE
                         DOCKET: BER L -005511 17

     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 2.

     DISCOVERY IS   300 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

     THE PRETRIAL JUDGE ASSIGNED IS:  HON GREGG A. PADOVANO

     IF YOU HAVE ANY QUESTIONS, CONTACT TEAM     001
AT:  (201) 527-2600.

     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                         ATTENTION:
                                    ATT: ERIC D. KATZ
                                    MAZIE SLATER KATZ & FREEMAN
                                    103 EISENHOWER PARKWAY
                                    ROSELAND        NJ 07068

JUBPVA
```

SUPERIOR COURT BERGEN COUNTY
FILED
AUG 1 5 2017

DEPUTY CLERK

Eric D. Katz | Atty. No. 016791991
David M. Estes | Atty. No. 034532011
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
P: 973-228-9898
F: 973-228-0303
E: ekatz@mskf.net
*Attorneys for Plaintiff*

| | |
|---|---|
| NORTH JERSEY BRAIN & SPINE CENTER, <br><br> Plaintiff, <br><br> vs. <br><br> AETNA LIFE INSURANCE COMPANY, <br><br> Defendant. | SUPERIOR COURT OF NEW JERSEY <br> LAW DIV., BERGEN COUNTY <br> DKT. NO. BER-L-5511-17 <br><br> Civil Action <br><br><br> **COMPLAINT &** <br> **JURY DEMAND** |

Plaintiff, North Jersey Brain & Spine Center, by way of Complaint against defendant, alleges as follows:

### THE PARTIES

A. **The Plaintiff**

1. Plaintiff North Jersey Brain & Spine Center ("NJBSC") is a medical practice specializing in spine surgery and treatment. NJBSC maintains its offices at 680 Kinderkamack Road, Suite 300, Oradell, New Jersey 07649. At all relevant times, NJBSC was an out-of-network, or non-participating, healthcare provider with respect to defendant and provided emergency, medically necessary surgical services to its patient, P.G. (full name withheld to protect the patient's confidentiality) (Aetna ID No. W160316518), who

was covered under a healthcare plan sponsored, funded, operated, controlled and/or administered by defendant.

**B.    The Defendant**

2.    Defendant Aetna Life Insurance Company ("Aetna") maintains its corporate office at 151 Farmington Avenue, Hartford, Connecticut 06156 and, at all relevant times, Aetna provided out-of-network emergency healthcare coverage and/or administrative services to P.G. under a fully-insured New Jersey healthcare plan.

3.    Aetna has been sanctioned in the past by the New Jersey Department of Banking and Insurance for its failure to properly pay for emergency services, such as the services rendered by NJBSC to P.G., and was ordered to pay a multi-million dollar fine due to its improper claims processing.

## SUBSTANTIVE ALLEGATIONS COMMON TO ALL COUNTS

4.    At all relevant times, plaintiff NJBSC was an out-of-network, or non-participating, healthcare provider regarding defendant and the emergency services rendered to P.G.

5.    At all relevant times, patient P.G. was covered under an Aetna fully-insured New Jersey healthcare plan. Under this plan, when emergency services are required, P.G. is expressly permitted to seek treatment from any out-of-network provider, precisely what P.G. did here.

6.    On or about May 10, 2016, P.G. was admitted through the Emergency Room at Hackensack University Medical Center ("HUMC"). The patient was admitted with right-sided neuralgia and in significant pain. As a result, NJBSC's surgeon performed an emergency craniectomy and cranioplasty on May 11, 2016.

7. NJBSC subsequently timely filed a clean claim for reimbursement with defendant, billing its usual, customary and reasonable ("UCR") charges totaling $117,350.00.

8. Pursuant to New Jersey law and regulations, defendant was and is obligated to pay NJBSC 100% of its billed UCR charges, less the patient's copay, coinsurance or deductible, if any, for emergency services and, in addition, was and is required to make payment to plaintiff within the time period set forth in the Healthcare Information Networks and Technologies Act ("HINT") and the Health Claims Authorization, Processing and Payment Act ("HCAPPA"), *i.e.*, 30 days for electronic claims and 40 days for non-electronic claims for all services. Under these statutory and regulatory schemes, interest is due to plaintiff for late paid claims.

9. The UCR fee is defined as, or is reasonably interpreted to mean, the amount that out-of-network providers, like plaintiff, normally charge to patients in the free market, *i.e.*, without an agreement with an insurance company or other payor to reduce such a charge in exchange for obtaining access to the defendant's members and beneficiaries. The UCR fee means the usual charge for a particular service by providers in the same geographic area with similar training and experience (*i.e.*, north New Jersey neurosurgical and spine surgical practice).

10. Moreover, when emergency services are rendered, such as those rendered by plaintiff, an out-of-network provider, to P.G. pre-authorization or pre-approval is not required.

11. Defendant, here, expressly admits that P.G. needed and was covered for emergency surgery when defendant processed and (grossly) underpaid NJBSC for the

3

surgeries rendered. Specifically, Aetna concedes that it is obligated under New Jersey insurance regulations that it must pay a large enough amount for P.G.'s emergency surgery in order to avoid the balance billing the patient. Specifically, Aetna's Explanations of Benefits contain a $0 patient responsibility, demonstrating that it expressly understood the emergent nature of the services rendered.

12. Although expressly admitting the emergent nature of the services rendered to P.G., defendant nevertheless refused to issue proper payment. In making grossly incorrect payment of only $3,989.23, which was erroneously based on Medicare and not UCR rates, defendant's actions or inactions were unlawful and improper because defendant failed to calculate the *amount* of the payment in accordance with the requirements of New Jersey statutory, regulatory and/or common law. Incredibly, Aetna labeled its payment "a fair payment" in an veiled effort to shirk its legal obligations under New Jersey regulatory insurance law.

13. On or about June 24, 2016, Aetna's cost-containment agent, Global Claims Services, attempted to negotiate a resolution of the emergency services charges, offering $70,410.00 in payment. NJBSC declined the offer, noting Aetna's obligations under New Jersey law to pay up to 100% of billed charges in order to avoid balance billing the patient.

14. With respect to patient P.G. and the claim referenced above, as well as a matter of regular business practice, plaintiff engaged in regular communications and discussions with Aetna, including submission of its claims directly to Aetna and continuing telephonic follow-up with Aetna on the status of processing and payment. In addition, (under)payment for the subject claims was made by Aetna directly to NJBSC. Aetna also

directly issued to plaintiff Explanation of Benefit statements, and NJBSC undertook and engaged in a direct appeal of defendant's reimbursement and payment decisions.

15. In July 2016, NJBSC filed an unsuccessful appeal of the underpayment with defendant. Plaintiff has exhausted defendant's appeal process. Defendant's appeal process is also futile, and plaintiff has not been provided access to a meaningful review process. Further appeals would be futile, even if they were available.

16. Throughout the parties' course of dealings and numerous forms of communication and interaction, Aetna voluntarily and freely engaged with and dealt directly with NJBSC. Nor did defendant ever advise, reference or disclose to NJBSC any impediment to dealing directly with plaintiff to resolve these and other reimbursement disputes. NJBSC relied in good faith on defendant's conduct and the parties' course of dealings.

17. By and through this lawsuit, NJBSC now seeks damages, including prompt payment interest, from defendant that it is obligated to pay under New Jersey statutes and regulations for late paid claims.

18. All of the subject claims arise from New Jersey state common, statutory and regulatory law, and not from any purported federal law or statute. Plaintiff has asserted direct claims and causes of action that are not predicated on an assignment of benefits from the patient.

19. The claims in this lawsuit dispute the reimbursement amounts paid by defendant and thus do not arise under or implicate federal subject matter jurisdiction under the Employee Retirement Income Security Act (ERISA), or any other federal or statutory regulatory scheme. This lawsuit addresses defendant's failure to provide the appropriate

5

*amount* of coverage to the patient and defendant's failure to properly *reimburse* plaintiff for its services to that patient. There is no dispute that defendant's plan at issue provides coverage for P.G. and the emergent medical and surgical services rendered by plaintiff that are in dispute.

### FIRST COUNT
### (Breach of Implied Contract)

20. Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

21. Defendant indicated, by a course of conduct, dealings and the circumstances surrounding the relationship, to NJBSC that defendant would pay for the emergency surgical services provided by plaintiff to P.G.

22. Defendant represented that, at all relevant times, P.G. was covered for out-of-network emergency care, under the patient's plan, and that the patient could go to any doctor or emergency room when the patient required emergency care, and that the patient would only be responsible to pay the plan's copayments, coinsurance and deductibles at an in-network level when emergency services were rendered.

23. Defendant further expressly admits that the services rendered by plaintiff to P.G. were emergent, and therefore covered, based on the (under)payment made by defendant for such services, payment that would not have otherwise been made if the services were non-emergent. This concession is further demonstrated by the $0 patient responsibility indicated in Aetna's Explanations of Benefits, as well as defendant's attempt to negotiate a settlement through its cost-containment agent.

6

24. Defendant also know that New Jersey providers, like NJBSC, are required by law to treat defendant's members and beneficiaries if they require emergency medical care.

25. Defendant further indicated to NJBSC by a course of conduct, dealings and the circumstances surrounding the relationship, including applicable New Jersey statutes and regulations, that defendant would pay billed UCR rates for emergency care that are based upon what other healthcare providers of the same specialty in the same geographic area charge for the services rendered by NJBSC.

26. NJBSC rendered emergent, medically necessary surgical and medical services to P.G., and in doing so, plaintiff reasonably expected defendant to properly compensate plaintiff.

27. A reasonable person in the position of defendant would know or reasonably should have known that plaintiff was performing the services expecting that defendant would pay for them appropriately.

28. Despite indicating to NJBSC by a course of conduct, dealings and the circumstances surrounding the relationship that defendant would properly reimburse plaintiff its billed UCR charges as an out-of-network provider rendering emergency services, defendant failed to do so.

29. The failure of defendant to pay proper rates for the emergency services rendered by plaintiff to P.G. constitutes breach of the implied contract between defendant and NJBSC.

30. As a result of this breach, NJBSC has been damaged.

**WHEREFORE**, plaintiff demands judgment against defendant for:

      a)    Compensatory damages;

      b)    Interest;

      c)    Costs of suit;

      d)    Attorneys' fees; and

      e)    Such other relief as the Court deems equitable and just.

## SECOND COUNT
### (Breach of the Covenant of Good Faith & Fair Dealing)

31. Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

32. The law implies in every contractual relationship, including the implied contract between plaintiff and defendant, a covenant of good faith and fair dealing. Defendant is required to act in a manner that is consistent with plaintiff's reasonable expectations.

33. Defendant acted with an improper motive and injured plaintiff's rights and benefits under the contract, and breached the contract through acts of commission and omission described herein that are wrongful and without justification.

34. As a result of this breach, NJBSC has been damaged.

**WHEREFORE**, plaintiff demands judgment against defendant for:

      a)    Compensatory damages;

      b)    Interest;

      c)    Costs of suit;

      d)    Attorneys' fees; and

      e)    Such other relief as the Court deems equitable and just.

8

## THIRD COUNT
### (Unjust Enrichment & *Quantum Meruit*)

35. Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

36. Defendant has enriched itself unjustly at the expense of plaintiff NJBSC.

37. Defendant refused to pay NJBSC correctly for the emergency surgical services it provided to P.G. contrary to the New Jersey common law, statutory and regulatory obligations of defendant.

38. Defendant was paid premiums by P.G. for out-of-network emergency services coverage and, pursuant to said premiums, defendant was legally obligated to provide such coverage to P.G. and properly pay for emergency services.

39. To satisfy its coverage and legal obligations, defendant required the services of NJBSC to render the emergency services to P.G. Plaintiff did, in fact, render such surgical services to P.G.

40. Defendant has, therefore, received and retained a benefit as a result of plaintiff rendering emergency surgical services to P.G. that remain grossly underpaid. Thus, defendant has been unjustly enriched through the use of funds that earned interest or otherwise added to its profits when said money should have been paid in a timely and appropriate manner to plaintiff.

41. As a result of defendant's unjust enrichment, plaintiff has suffered damages.

**WHEREFORE**, plaintiff demands judgment against defendant for:

a) Compensatory damages;

b) Interest;

c) Costs of suit;

    d)    Attorneys' fees; and

    e)    Such other relief as the Court deems equitable and just.

## FOURTH COUNT
### (Interference with Economic Advantage)

42. Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

43. NJBSC had a reasonable expectation of economic advantage or benefit belonging or accruing to the plaintiff.

44. Defendant knew, or reasonably should have known, of plaintiff's expectancy of economic advantage.

45. Defendant wrongfully interfered with plaintiff's expectancy of economic advantage or benefit.

46. But for defendant's wrongful acts, it is reasonably probable that plaintiff would have realized its economic advantage or benefit.

47. As a result, NJBSC has been damaged.

**WHEREFORE**, plaintiff demands judgment against defendant for:

    a)    Compensatory damages;

    b)    Interest;

    c)    Costs of suit;

    d)    Attorneys' fees; and

    e)    Such other relief as the Court deems equitable and just.

## FIFTH COUNT
### (Violations of New Jersey Regulations Governing Payment for Emergency Services Rendered by an Out-of-Network Provider)

48. Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

49. New Jersey's health insurance regulations require that, when a privately-insured patient seeks emergency services, an out-of-network provider must be paid a large enough amount to ensure that the patient is not balance billed, that is, charged for the difference between the insurer reimbursed amount and the provider's billed charges. This so-called "Emergency Room Mandate" applies even if it means that the payor, defendant herein, must pay the provider its actual billed charges minus the copayments, coinsurance and deductibles that would have applied had the patient sought treatment from an in-network provider.

50. NJBSC has a private right of action, express or implied, to prosecute its claim under these regulations.

51. Defendant is obligated to pay NJBSC one-hundred percent (100%) of plaintiff's UCR fees, less the patient's applicable copay, coinsurance or deductible, pursuant to N.J.A.C. 11:22-5.8, 11:24-5.3, 11:24-5.1, and 11:24-9.1(d).

52. Contrary to New Jersey healthcare regulations, however, defendant has not properly paid plaintiff for the emergency surgical services rendered to P.G. and plaintiff's bills remain outstanding for those services.

53. As a result of defendant's violations of these health insurance regulations and related legal obligations, NJBSC has been damaged.

**WHEREFORE**, plaintiff demands judgment against defendant for:

    a)    Compensatory damages;

    b)    Interest;

    c)    Costs of suit;

    d)    Attorneys' fees; and

    e)    Such other relief as the Court deems equitable and just.

## SIXTH COUNT
### (Violations of HINT & HCAPPA)

54.  Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

55.  Pursuant to the Healthcare Information Networks and Technologies Act ("HINT"), N.J.S.A. 17B:30-23, 17:48-8.4, 17:48A-7.12, 17:48E-10.1, 17B:26-9.1, 17B:27-44.2 and 26:2J-8.1, and the corresponding regulations, N.J.A.C. 11:22-1, *et seq.*, defendant is required to remit payment to a healthcare provider for an "eligible" non-capitated claim for medical services no later than thirty (30) calendar days following electronic receipt of the claim by defendant, or forty (40) calendar days following non-electronic receipt of the claim by defendant.  In the alternative, defendant is required to notify the provider within seven (7) calendar days of the specific reasons for a denial or dispute, and to expeditiously request any missing information or documentation required to process the claims, pursuant to the Health Claims Authorization, Processing and Payment Act ("HCAPPA").

56.  Plaintiff has a private right of action, express or implied, to prosecute its claims under HINT, HCAPPA and their regulations.

57.  All overdue payments must bear simple interest at the rate of ten (10) percent per annum, pursuant to HCAPPA.

58. Despite its statutory duties, defendant as a matter of practice and/or policy delayed payment of properly submitted claims from plaintiff and did not pay the claims correctly, and then did not pay proper interest on the delayed payments. By delaying payment of a claim, defendant earned and continues to earn profits from its use of the funds, profits that it would not have earned or continued to earn if payment were made to plaintiff in a timely manner.

59. NJBSC submitted "clean" or "eligible" non-capitated claims related to the services to P.G. that defendant failed to pay correctly within the prescribed statutory time-period despite attempts by plaintiff to address and resolve these issues with defendant. These practices by defendant are in violation of HINT and HCAPPA.

60. As a result of defendant's violations of HINT and HCAPPA, plaintiff has been damaged.

**WHEREFORE**, plaintiff demands judgment against defendant for:

  a) Compensatory damages;

  b) Interest;

  c) Costs of suit;

  d) Attorneys' fees; and

  e) Such other relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

                **MAZIE SLATER KATZ & FREEMAN, LLC**
                *Attorneys for Plaintiff*

                By:_____
                     ERIC D. KATZ

DATED: August 14, 2017

## DESIGNATION OF TRIAL COUNSEL

Plaintiff hereby designates Eric D. Katz, Esq. as trial counsel in the above matter.

                **MAZIE SLATER KATZ & FREEMAN, LLC**
                *Attorneys for Plaintiff*

                By:_____
                     ERIC D. KATZ

DATED: August 14, 2017

## CERTIFICATION PURSUANT TO RULE 4:5-1(b)2

ERIC D. KATZ, of full age, hereby certifies that:

1.    I am a partner with the law firm of Mazie Slater Katz & Freeman, LLC, attorneys for plaintiff in this action.

2.    To the best of my knowledge, the matter in controversy is not the subject of any other action pending in any Court or any pending arbitration proceeding.

14

3.	No other actions or arbitration proceedings are contemplated by this plaintiff against the pled defendant at this time.

4.	I know of no other parties that should be joined in this action at this time. I certify that the foregoing statements made by me are true. I am aware that if the foregoing statements made by me are willfully false, I am subject to punishment.

_____
ERIC D. KATZ

DATED: August 14, 2017

<u>Appendix XII-B1</u>



| CIVIL CASE INFORMATION STATEMENT (CIS) Use for initial Law Division Civil Part pleadings (not motions) under *Rule* 4:5-1 Pleading will be rejected for filing, under *Rule* 1:5-6(c), if information above the black bar is not completed or attorney's signature is not affixed | FOR USE BY CLERK'S OFFICE ONLY |
|---|---|
| | PAYMENT TYPE: ☐CK ☐CG ☐CA |
| | CHG/CK NO. |
| | AMOUNT: |
| | OVERPAYMENT: |
| | BATCH NUMBER: |

| ATTORNEY / PRO SE NAME<br>Eric D. Katz, Esq. | TELEPHONE NUMBER<br>(973) 228-9898 | COUNTY OF VENUE<br>Bergen |
|---|---|---|
| FIRM NAME (if applicable)<br>Mazie Slater Katz & Freeman, LLC | | DOCKET NUMBER (when available)<br>L SS11-17 |
| OFFICE ADDRESS<br>103 Eisenhower Parkway<br>Roseland, New Jersey 07068 | | DOCUMENT TYPE<br>Complaint |
| | | JURY DEMAND  ■ YES  ☐ No |

| NAME OF PARTY (e.g., John Doe, Plaintiff)<br>North Jersey Brain & Spine Center, Plaintiff | CAPTION<br>North Jersey Brain & Spine Center v. Aetna Life Ins. Co. |
|---|---|

| CASE TYPE NUMBER<br>(See reverse side for listing)<br>599 | HURRICANE SANDY RELATED?<br>☐ YES  ■ NO | IS THIS A PROFESSIONAL MALPRACTICE CASE?  ☐ YES  ■ NO<br>IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |
|---|---|---|
| RELATED CASES PENDING?<br>☐ YES  ■ No | | IF YES, LIST DOCKET NUMBERS |
| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)?<br>☐ YES  ■ No | | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known)<br>☐ NONE<br>■ UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?<br>■ YES  ☐ No | IF YES, IS THAT RELATIONSHIP:<br>☐ EMPLOYER/EMPLOYEE  ☐ FRIEND/NEIGHBOR  ☐ OTHER (explain)<br>☐ FAMILIAL  ■ BUSINESS |
|---|---|
| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY? | ☐ YES  ■ No |

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?<br>☐ YES  ■ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|
| WILL AN INTERPRETER BE NEEDED?<br>☐ YES  ■ No | IF YES, FOR WHAT LANGUAGE? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE: *[signature]*

Effective 06/05/2017, CN 10517    page 1 of 2

**Side 2**

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

### Track I - 150 days' discovery
- 151 NAME CHANGE
- 175 FORFEITURE
- 302 TENANCY
- 399 REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
- 502 BOOK ACCOUNT (debt collection matters only)
- 505 OTHER INSURANCE CLAIM (including declaratory judgment actions)
- 506 PIP COVERAGE
- 510 UM or UIM CLAIM (coverage issues only)
- 511 ACTION ON NEGOTIABLE INSTRUMENT
- 512 LEMON LAW
- 801 SUMMARY ACTION
- 802 OPEN PUBLIC RECORDS ACT (summary action)
- 999 OTHER (briefly describe nature of action)

### Track II - 300 days' discovery
- 305 CONSTRUCTION
- 509 EMPLOYMENT (other than CEPA or LAD)
- 599 CONTRACT/COMMERCIAL TRANSACTION
- 603N AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold)
- 603Y AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold)
- 605 PERSONAL INJURY
- 610 AUTO NEGLIGENCE – PROPERTY DAMAGE
- 621 UM or UIM CLAIM (includes bodily injury)
- 699 TORT – OTHER

### Track III - 450 days' discovery
- 005 CIVIL RIGHTS
- 301 CONDEMNATION
- 602 ASSAULT AND BATTERY
- 604 MEDICAL MALPRACTICE
- 606 PRODUCT LIABILITY
- 607 PROFESSIONAL MALPRACTICE
- 608 TOXIC TORT
- 609 DEFAMATION
- 616 WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
- 617 INVERSE CONDEMNATION
- 618 LAW AGAINST DISCRIMINATION (LAD) CASES

### Track IV - Active Case Management by Individual Judge / 450 days' discovery
- 156 ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
- 303 MT. LAUREL
- 508 COMPLEX COMMERCIAL
- 513 COMPLEX CONSTRUCTION
- 514 INSURANCE FRAUD
- 620 FALSE CLAIMS ACT
- 701 ACTIONS IN LIEU OF PREROGATIVE WRITS

### Multicounty Litigation (Track IV)
- 271 ACCUTANE/ISOTRETINOIN
- 274 RISPERDAL/SEROQUEL/ZYPREXA
- 281 BRISTOL-MYERS SQUIBB ENVIRONMENTAL
- 282 FOSAMAX
- 285 STRYKER TRIDENT HIP IMPLANTS
- 286 LEVAQUIN
- 287 YAZ/YASMIN/OCELLA
- 289 REGLAN
- 290 POMPTON LAKES ENVIRONMENTAL LITIGATION
- 291 PELVIC MESH/GYNECARE
- 292 PELVIC MESH/BARD
- 293 DEPUY ASR HIP IMPLANT LITIGATION
- 295 ALLODERM REGENERATIVE TISSUE MATRIX
- 296 STRYKER REJUVENATE/ABG II MODULAR HIP STEM COMPONENTS
- 297 MIRENA CONTRACEPTIVE DEVICE
- 299 OLMESARTAN MEDOXOMIL MEDICATIONS/BENICAR
- 300 TALC-BASED BODY POWDERS
- 601 ASBESTOS
- 623 PROPECIA
- 624 STRYKER LFIT CoCr V40 FEMORAL HEADS

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1, in the space under "Case Characteristics.

**Please check off each applicable category**   ☐ Putative Class Action   ☐ Title 59